Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK THOMPSON, On Behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, INC., GREGORY B. MAFFEI, ROGER CONANT FAXON, DAVID J. FREAR, JASON HIRSCHHORN, TIMOTHY LEIWEKE, ROGER J. LYNCH, MICHAEL M. LYNTON, JAMES E. MEYER, and MICKIE ROSEN,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Derek Thompson ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

- 1 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Pandora Media, Inc. ("Pandora" or the "Company") against Pandora and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Pandora will be acquired by Sirius XM Holdings Inc. ("Sirius XM") through its wholly owned subsidiary, White Oaks Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2. On September 24, 2018, Pandora and Sirius XM issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated September 23, 2018 (the "Merger Agreement") to sell Pandora to Sirius XM. Under the terms of the Merger Agreement, Pandora stockholders will be entitled to receive 1.44 shares of Sirius XM common stock for each Pandora common share they own (the "Merger Consideration"). The Merger Consideration has an implied value of $10.05 per share based on the closing price of Sirius XM's stock on September 21, 2018. The Proposed Transaction is valued at approximately $3.5 billion.

3. On October 31, 2018, Pandora and Sirius XM filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement, which recommends that Pandora stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Sirius XM's financial projections and the projected cost savings and operating synergies for the combined company, relied upon by Pandora's financial advisor Centerview Partners LLC ("Centerview") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and LionTree Advisors LLC ("LionTree"); and (iii) LionTree's

potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Pandora stockholders need such material information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, Pandora's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Pandora is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Pandora.

9. Defendant Pandora is a Delaware corporation with its principal executive offices located at 2100 Franklin Street, Suite 700, Oakland, CA 94612. The Company provides music discovery platform services in the United States and internationally. Pandora's common stock is traded on the New York Stock Exchange under the ticker symbol "P."

10. Defendant Gregory B. Maffei ("Maffei") has been a director of the Company since September 2017 and serves as the Company's Chairman of the Board. Defendant Maffei has also served as a director on Sirius XM's Board of Directors since 2009, and as Chairman of Sirius XM's Board since 2013.

11. Defendant Roger Conant Faxon ("Faxon") has been a director of the Company since June 2015.

12. Defendant David J. Frear ("Frear") has been a director of the Company since September 2017. Defendant Frear has served as a Senior Executive Vice President and Chief Financial Officer ("CFO") of Sirius XM since 2015, and has held other executive positions at Sirius XM since 2003.

13. Defendant Jason Hirschhorn ("Hirschhorn") has been a director of the Company since June 2017.

14. Defendant Timothy Leiweke ("Leiweke") has been a director of the Company since April 2015.

15. Defendant Roger J. Lynch ("Lynch") serves as the Company's President and Chief Executive Officer ("CEO") and has been a director of the Company since September 2017.

16. Defendant Michael M. Lynton ("Lynton") has been a director of the Company since August 2017.

17. Defendant James E. Meyer ("Meyer") has been a director of the Company since September 2017. Defendant Meyer is the CEO of Sirius XM, a position he has held since 2012, and has been on the Board of Sirius XM since 2013. Defendant Meyer has held previous executive positions at Sirius XM dating to 2004.

18. Defendant Mickie Rosen ("Rosen") has been a director of the Company since September 2015.

19. Defendants Maffei, Faxon, Frear, Hirschhorn, Leiweke, Lynch, Lynton, Meyer and Rosen are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Sirius XM is a Delaware corporation with its principal executive offices located at 1290 Avenue of the Americas, 11th Fl., New York, New York 10104. Sirius XM is the world's largest radio company by revenue with approximately 33.5 million subscribers. Sirius XM's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SIRI."

21. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Sirius XM.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Pandora common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of September 21, 2018, there were 269,739,919 shares of Pandora common stock outstanding. All

members of the Class may be identified from records maintained by Pandora or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

28. Pandora provides music discovery platform services in the United States and internationally. The Company offers streaming radio and on-demand music services, which enable

the listeners to create personalized stations and playlists, as well as search and play songs and albums on-demand.

29. The Company also provides Pandora Ad-Supported Radio Service, an ad-supported service that allows listeners to access a catalog of music, comedy, livestreams, and podcasts through its personalized playlist generating system for free across its various delivery platforms, as well as Premium Access, a service to listeners to access on-demand listening experience; and Pandora Plus, a subscription radio service, which also includes replays, additional skipping of songs, offline listening, higher quality audio on supported devices, and longer timeout-free listening.  In addition, the Company offers Pandora Premium, an on-demand subscription service that provides users the ability to search, play, and collect songs and albums, build playlists on their own or with the tap of a button, listen to curated playlists, and share playlists on social networks.

30. The Company's most recent financial results prior to the announcement of the Proposed Transaction indicate sustained and solid financial performance.  In the July 31, 2018 press release announcing its second quarter 2018 financial results, the Company highlighted revenue for the quarter of $384.8 million, a 12% increase from the second quarter of 2017 and an increase in subscription revenue of 67% compared to the second quarter of 2017.  Commenting on these positive results, defendant Lynch noted:

> We made continued progress against our strategy with total revenue growing 12%, subscription revenue up 67% and ad hour trends improving for the third straight quarter. . . . New partnerships with top brands like Snap and AT&T, as well as enhancements to our ad tech and programmatic offerings, position us to further accelerate growth and ownership of the expanding digital audio marketplace.

31. On September 24, 2018, Pandora and Sirius XM issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

> NEW YORK and OAKLAND, Calif., Sept. 24, 2018 -- Sirius XM Holdings Inc. (NASDAQ: SIRI) and Pandora Media, Inc. (NYSE: P) today announced a definitive agreement under which SiriusXM will acquire Pandora in an all-stock transaction valued at approximately $3.5 billion. The combination creates the world's largest

audio entertainment company, with more than $7 billion in expected pro-forma revenue in 2018 and strong, long-term growth opportunities.

This strategic transaction builds on SiriusXM's position as the leader in subscription radio and a critically-acclaimed curator of exclusive audio programming with the addition of the largest U.S. audio streaming platform. Pandora's powerful music platform will enable SiriusXM to significantly expand its presence beyond vehicles into the home and other mobile areas. Following the completion of the transaction, there will be no immediate change in listener offerings.

The combined company will drive long-term growth by:

- Capitalizing on cross-promotion opportunities between SiriusXM's base of more than 36 million subscribers across North America and 23 million-plus annual trial listeners and Pandora's more than 70 million monthly active users, which represents the largest digital audio audience in the U.S.
- Leveraging SiriusXM's exclusive content and programming with Pandora's ad-supported and subscription tiers to create unique audio packages, while also utilizing SiriusXM's extensive automotive relationships to drive Pandora's in-car distribution.
- Continuing investments in content, technology, innovation, and expanded monetization opportunities through both ad-supported and subscription services in and out of the vehicle.
- Supporting and strengthening Pandora's highly relevant brand.
- Creating a promotional platform for emerging and established artists, curated and personalized in ways to deliver the most compelling audio experience that connects artists to their fan bases, as well as new listeners.

Jim Meyer, Chief Executive Officer of SiriusXM, said, "We have long respected Pandora and their team for their popular consumer offering that has attracted a massive audience, and have been impressed by Pandora's strategic progress and stronger execution. We believe there are significant opportunities to create value for both companies' stockholders by combining our complementary businesses. The addition of Pandora diversifies SiriusXM's revenue streams with the U.S.'s largest ad-supported audio offering, broadens our technical capabilities, and represents an exciting next step in our efforts to expand our reach out of the car even further. Through targeted investments, we see significant opportunities to drive innovation that will accelerate growth beyond what would be available to the separate companies, and does so in a way that also benefits consumers, artists, and the broader content communities. Together, we will deliver even more of the best content on radio to our passionate and loyal listeners, and attract new listeners, across our two platforms."

Roger Lynch, Chief Executive Officer of Pandora, said, "We've made tremendous progress in our efforts to lead in digital audio. Together with SiriusXM, we're even better positioned to take advantage of the huge opportunities we see in audio entertainment, including growing our advertising business and expanding our subscription offerings. The powerful combination of SiriusXM's content, position in the car, and premium subscription products, along with the biggest audio streaming

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

service in the U.S., will create the world's largest audio entertainment company. This transaction will deliver significant value to our stockholders and will allow them to participate in upside, given SiriusXM's strong brand, financial resources and track record delivering results."

**Transaction Details**

Pursuant to the agreement, the owners of the outstanding shares in Pandora that SiriusXM does not currently own will receive a fixed exchange ratio of 1.44 newly issued SiriusXM shares for each share of Pandora they hold. Based on the 30-day volume-weighted average price of $7.04 per share of SiriusXM common stock, the implied price of Pandora common stock is $10.14 per share, representing a premium of 13.8% over a 30-day volume-weighted average price. The transaction is expected to be tax-free to Pandora stockholders. SiriusXM currently owns convertible preferred stock in Pandora that represents a stake of approximately 15% on an as-converted basis.

The merger agreement provides for a "go-shop" provision under which Pandora and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals following the execution date of the definitive agreement. There can be no assurance this process will result in a superior proposal. Pandora does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

**The Registration Statement Contains Material Misstatements and Omissions**

32. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Pandora's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

33. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Sirius XM's financial projections and the projected cost savings and operating synergies for the combined company, relied upon by Pandora's financial advisor Centerview; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and LionTree; and (iii) potential conflicts of interest of LionTree. Accordingly,

Pandora stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Sirius XM's Financial Projections and the Projected Cost Savings and Operating Synergies For the Combined Company***

34.     The Registration Statement is materially deficient because it fails to disclose material information relating to Sirius XM's intrinsic value and prospects going forward and the projected cost savings and operating synergies for the combined company, relied upon by Pandora's financial advisor Centerview.

35.     For example, the Registration Statement sets forth that in connection with rendering its fairness opinion and performing its related financial analyses, Centerview reviewed "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Sirius XM (collectively, the "Sirius XM Internal Data")." Registration Statement at 60. The Registration Statement fails, however, to disclose the Sirius XM Internal Data. This complete lack of information regarding Sirius XM's potential future financial performance is highly relevant, given that the Merger Consideration is comprised of Sirius XM common stock.

36.     Additionally, the Registration Statement sets forth that in connection with rendering its fairness opinion and performing its related financial analyses, Centerview reviewed "certain cost savings and operating synergies projected by the management of Pandora to result from the transactions furnished to Centerview by Pandora for purposes of Centerview's analysis (the "Synergies")." *Id*. The Registration Statement fails, however, to disclose the Synergies relied upon by Centerview.

37.     The omission of this information renders the statements in the "Unaudited Forecasted Financial Information" and "Opinion of Centerview Partners LLC" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's and LionTree's Financial Analyses***

38. The Registration Statement describes Centerview's and LionTree's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Centerview's and LionTree's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pandora's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's and LionTree's fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Pandora's stockholders.

39. With respect to Centerview's *Discounted Cash Flows Analysis* ("DCF"), utilizing the "Pandora Scenario 1a Forecasts" and "Pandora Scenario 2 Forecasts," the Registration Statement fails to disclose: (i) quantification of the inputs and assumptions used to calculate the discount rate range of 9.50% to 11.50%; (ii) whether the forecasted unlevered after-tax free cash flows of Pandora that Centerview utilized in the analysis were the same figures as disclosed in the Registration Statement or further adjusted by Centerview based on "the assumptions provided by Pandora's management;" (iii) if adjusted by Centerview, the adjusted unlevered after-tax free cash flows of Pandora that Centerview utilized; (iv) the basis for applying adjusted EBITDA multiples of 10.0x to 12.5x in the DCF utilizing the Pandora Scenario 1a Forecasts; (v) the basis for applying adjusted EBITDA multiples of 10.5x to 13.0x in the DCF utilizing the Pandora Scenario 2 Forecasts; (vi) Pandora's net operating loss carryforwards ("NOLs") utilized by Centerview in the analysis; (vii) the range of terminal values of Pandora; and (viii) Pandora's net debt and minority interest.

40. With respect to LionTree's *DCF*, utilizing the "Pandora Scenario 1a Forecasts" and "Pandora Scenario 2 Forecasts," the Registration Statement fails to disclose (i) the range of terminal values of Pandora; (ii) Pandora's net debt; and (iii) a quantification of the inputs and assumptions used to calculate the discount rate range of 9.00% to 10.50%.

41. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. The omission of this information renders the statements in the "Opinions of Pandora's Financial Advisors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Potential Conflicts of Interest of LionTree*

43. The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor LionTree.

44. For example, the Registration Statement sets forth that:

> The Pandora board of directors selected LionTree as its financial advisor because LionTree is an internationally recognized investment banking firm that has substantial experience in transactions similar to these transactions, and because of its significant prior experience with the industries in which Pandora and Sirius XM operate. Pursuant to its engagement letter, Pandora will pay LionTree $4.0 million for its services which, subject to the following sentence, is contingent upon the consummation of the transactions. Pandora paid LionTree $2.0 million in connection with LionTree's delivery of its fairness opinion, which will be credited against the fee described in the preceding sentence upon the closing of the transactions. In addition, Pandora may pay LionTree an additional fee in its sole discretion in connection with the consummation of the transactions. Pandora has also agreed to reimburse LionTree for certain expenses and to indemnify LionTree, its affiliates, and certain related parties against certain liabilities and expenses.

*Id*. at 76.

45. However, the Registration Statement fails to disclose the maximum amount of the discretionary additional fee that Pandora may award LionTree, and the criteria LionTree needs to satisfy to receive the additional fee.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

47. The omission of this information renders the statements in the "Opinion of LionTree Advisors LLC" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

48. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. The Registration Statement misrepresented and/or omitted material facts, including material information about (i) Sirius XM's financial projections and the projected cost savings and operating synergies for the combined company, relied upon by Pandora's financial advisor Centerview; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by

Centerview and LionTree; and (iii) potential conflicts of interest of the Company's financial advisor LionTree. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

53. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

55. Plaintiff repeats and realleges all previous allegations as if fully set forth in herein.

56. The Individual Defendants acted as controlling persons of Pandora within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Pandora and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

59.  In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

60.  By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Pandora's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Pandora, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Pandora stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: November 16, 2018 | WEISSLAW LLP<br>Joel E. Elkins<br><br>By: /s/ _____<br>Joel E. Elkins<br>9107 Wilshire Blvd., Suite 450<br>Beverly Hills, CA 90210<br>Telephone: 310/208-2800<br>Facsimile: 310/209-2348<br>-and-<br>Richard A. Acocelli<br>1500 Broadway, 16th Floor<br>New York, NY 10036<br>Telephone: 212/682-3025<br>Facsimile: 212/682-3010<br><br>*Attorneys for Plaintiff* |
| **OF COUNSEL:**<br><br>**BRAGAR EAGEL & SQUIRE, P.C.**<br>Melissa A. Fortunato<br>885 Third Avenue, Suite 3040<br>New York, New York 10022<br>Tel: (212) 308-5858<br>Fax: (212) 486-0462<br>Email: fortunato@bespc.com<br><br>*Attorneys for Plaintiff* | |

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned certifies as follows:

1. I have reviewed the complaint in this matter against Pandora Media, Inc. ("Pandora") and others and authorized the filing thereof.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3. I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. My transactions in Pandora securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

5. I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):


6. I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated: November __, 2018

_____
Derek thompson (Nov 15, 2018)

Derek Thompson

| Transaction<br>(Purchase or Sale) | Trade Date | Quantity | Price per Share |
|---|---|---|---|
| Purchase | 4/21/2016 | 3 shares | $9.24 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |